IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OMAR REEVE<br>    Plaintiff<br>vs.<br><br>THE CITY OF PHILADELPHIA, PHILADELPHIA POLICE OFFICER REYNOLDS, BADGE # 4268; PHILADELPHIA POLICE OFFICER WALKER, BADGE # 3730; PHILADELPHIA POLICE OFFICER NORMAN, BADGE # 5214; PHILADELPHIA POLICE OFFICER KELLY, BADGE # 7126, individually and in their capacity as police officers<br>    Defendants | : <br> : <br> : <br> : <br> : JURY TRIAL <br> : DEMAND <br> : <br> : C.A. NO. 22- <br> : <br> : <br> : <br> : <br> : <br> : |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. Plaintiff brings this action under 42 U.S.C. §1983 seeking redress for the extraordinary misconduct of five Philadelphia police officers who used improper and unconstitutional means to secure search warrants by deception and misrepresentation, search persons and property, and subject citizens to unlawful arrest, detention and prosecution. The actions and conduct of the Defendant police officers were the result of policies, practices, customs, and deliberate indifference on the part of Defendant City of Philadelphia, including the failure to take disciplinary and remedial action against the Defendant officers and other Philadelphia police officers despite documented records of misconduct and abuses of authority.

### II. JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory provision.

## III. PARTIES

3. Plaintiff, Omar Reeve is an adult male who was at all times relevant to its Complaint, a resident of Philadelphia, Pennsylvania.

4. Defendant City of Philadelphia is a City of the First Class in the Commonwealth of Pennsylvania and at all times relevant hereto operated under the color of state law in creating and maintaining a Police Department, was the employer of all Defendants and had the responsibility of adopting policies, implementing procedures and practices which would create an environment whereby citizens would be safe from police abuse.

5. Defendant Reynolds, Badge number 4268, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

6. Defendant Walker, Badge number 3730, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

7. Defendant Norman, Badge number 5214, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

8. Defendant Kelly, Badge number 7126, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

## IV. FACTS

9. For more than twenty years, Philadelphia police officers assigned to various narcotics units have engaged in a pattern and practice of securing search warrants based on fraud and misrepresentation, the misuse of informants, the improper execution of search warrants, the falsification of evidence, the destruction and theft of personal property, and related misconduct.

10. On August 31, 2000, Philadelphia Police Officers executed a search and seizure warrant at 5412 Jefferson Street, Philadelphia, Pennsylvania. They seized from that location approximately 654 grams of "crack" cocaine, three (3) firearms, various drug trafficking paraphernalia, including scales, baggies, numerous red-capped vials, and $7,100 in cash.

11. In a 2000 Mercedes Benz, police discovered a Smith & Wesson hand gun loaded with six (6) rounds, one (1) in the chamber.

12. On August 31, 2000, the Officers executed a second search and seizure warrant at 5507 Master Street, Philadelphia, Pennsylvania, where the police claim that Petitioner stored 129 grams of cocaine powder and drug paraphernalia.

13. The affidavit submitted for this search warrant was signed by Police Officer Brian Reynolds and indicates that he received information from a concerned citizen regarding sales of narcotics on the highway of 5500 Lansdowne Avenue.

14. According to Reynolds' affidavit, the concerned citizen stated that the narcotics for the operation are stored at 5412 Jefferson Street and that there are several black males involved in the operation. The affidavit further states that the concerned citizen identified Dennis Freeman, his brother, Jamie or Jammy, and Leroy

as principals of the drug operation. The concerned citizen also stated that these males used different vehicles, stating that Dennis Freeman drives a black Mercedes Benz, PA No. DKK 2310; his brother Jamie or Jammy drives a tan Cadillac Escalade, PA No. DKK2312; and that Leroy drives a black Jeep Grand Cherokee.

15. The Affidavit goes on to state that Officer Reynolds conducted a surveillance at 5412 Jefferson Street on August 30, 2000 at approximately 2:08 PM. At that time, he observed Dennis Freeman go into the property, located at 5412 Jefferson Street, carrying a black plastic bag. At approximately 2:45 PM, Reynolds observed a black Buick with tinted windows, PA No. ALR9162, pull up to 5412 Jefferson Street, and black male # 2 enter the property.

16. At approximately 3:00 PM, black male # 2 exited the property looking around and holding two (2) clear plastic baggies containing smaller red objects, which he believed to be bundles of narcotics. Black male # 2 placed one bundle of narcotics in his front pants pocket and one in his rear pants pocket. He then left 5412 Jefferson Street and went to 55th and Merion Avenue, where he was picked up by the black Buick with tinted windows. That vehicle was followed to 5500 Lansdowne Avenue, where black male # 2 exited the Buick and met with black male # 3. Officers then observed black male # 2 and black male # 3 involved in four (4) narcotics transactions with unknown black males. During that time, Officers observed black males # 2 and # 3 having conversations with other unknown black males, at which time, the unknown black males would hand black male # 3 an undetermined amount of United States currency for small objects that black male # 2 would retrieve from his rear pants pocket. The unknown black males would then leave the area.

17. At approximately 3:22 PM, Police Officer Reynolds observed a tan Cadillac Escalade parked at 55th and Jefferson Streets, at which time black male # 4 exited, looking around and carrying a white plastic container and a brown bag. Black male # 4 went into 5412 Jefferson Street.

18. At 3:40 PM, Police Officer Stubbs was with a Confidential Informant, who was briefed and searched prior to going to 5500 Lansdowne Avenue to make a narcotic purchase.

19. At that location, Officers observed the Confidential Informant have a brief conversation with black male # 3, at which time former Philadelphia Police Officer Jeffrey Walker observed black male # 3 point to black male # 2.[1] The Confidential Informant then had a brief conversation with black male # 2, handed him $40 in United States currency, pre-recorded buy money. At that time, black male # 2 reached into his rear pants pocket and retrieved small objects handing them to the Confidential Informant. The Confidential Informant then returned to Police Officer Stubbs and turned over eight (8) clear vials with red tops, each containing an off-white chunky substance.

20. The Affidavit goes on to allege that the Confidential Informant was kept under surveillance by Police Officers who never lost sight of him. After the purchase, the Confidential Informant was again searched by Police Officers with negative results. Police Officer Reynolds then conducted a field test on one of the

---

[1] Jeffrey Walker began cooperating with the FBI following his arrest in a 2013 FBI sting. In April 2015, he testified against his former colleagues on behalf of the federal government. See *US v Liciardello*, 2:14-cr-00412. In September and October of 2016, he testified against these same officers in a group of Civil Rights cases under lead case of *McIntyre v Police Officer Liciardello*, C.A. No. 13-2773 (E.D. Pa., May 20, 2013).

items purchased by the Confidential Informant, which was positive for the presence of cocaine base.

21. The Affidavit also alleges that the Confidential Informant has been used in the past and has proven to be trustworthy and reliable. Based upon all of this, Police Officer Reynolds requested a Search Warrant for that property.

22. On May 19, 2003, Plaintiff was arrested and charged with narcotic violations.

23. The Defendant Officers and other officers all gave false statements concerning the incident described in the complaint.

24. The Defendant Officers and other officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff for the incident described in this complaint. Those misrepresentations included, but were not limited to:

a. That they had probable cause to arrest the Plaintiff;

b. That they misrepresented information concerning a "concerned citizen" and misused that person to obtain a warrant; and

c. That the Defendant Officers lied about the times of their activities; the times indicated in their reports of events which did not occur; this was done to conceal their illegal activities.

25. Defendant Officers were aware of exculpatory information about the Plaintiff.

26. The Defendant Officers failed to provide exculpatory information known to them to the Plaintiff or his criminal counsel via police paperwork or any other means after the arrest.

27. The exculpatory information known to police that was not provided to the Plaintiff included the real facts and circumstances of the incident.

28. The misrepresentations contained in arrest report and property receipt were material to the probable cause determination of the arrest; indeed, without these allegations, the probable cause required for Plaintiff's arrest contain no cause or reason to warrant the arrest.

29. On December 8, 2009, because Plaintiff was faced with the prospect of years of imprisonment, he tendered a plea of guilty for narcotic related offenses of 2 years of incarceration and 4 years' probation.

30. In December 2012, the Philadelphia District Attorney's Office informed Philadelphia Police Commissioner Ramsey that Defendants Reynolds and Norman would no longer be permitted to be witnesses in narcotic cases due to an ongoing investigation regarding his credibility as police officers. Defendants Reynolds and Norman were transferred out of the narcotic unit.

31. On July 30, 2014, Defendants Reynolds and Norman were arrested and charged with racketeering conspiracy, civil rights violations, robbery and extortion.

32. On September 10, 2021, as a result of the Defendant Officers' arrest, Plaintiff's 2003 conviction was reversed.

33. The Defendant officers, acting in concert and conspiracy, caused the Plaintiff to be unlawfully arrested, subjected to false criminal charges, malicious prosecution and prolonged detention by falsifying information in the arrest report, the 75-49, and at the preliminary hearing; failing to disclose to prosecutors the fact that the information provided to the authorities in support of the arrest was false and

misleading, the information in supporting police documents was false and misleading and his testimony at trial was false and misleading; fabricating evidence to support the claim that the Plaintiff was involved in criminal activity, and failing to disclose other exculpatory evidence regarding these criminal charges.

34. The only evidence leading to Plaintiff's conviction was derived from the false and misleading information provided by the Defendant Officer(s).

35. At the time of this incident, and for some years before, law enforcement at the highest levels knew of integrity, corruption, and civil rights violation issues involving some and/or all of the Defendant Officer(s). Federal agents and federal prosecutors knew. The current Philadelphia Police Commissioner, his predecessors, and some of his subordinates knew. Former District Attorney Lynn Abraham and some of her subordinates, as well as her successor in office knew. The basis of this knowledge was information from multiple sources including, but not limited to, federal investigations, questions raised by state and federal prosecutors, and other sources.

36. The foregoing conduct of the Defendant Officer(s), acting under the color of state law, was undertaken in concert and conspiracy and as part of an effort to unlawful arrest, maliciously prosecute and violate his right to due process of law and otherwise deprive Plaintiff of his civil and constitutional rights including Plaintiff's rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania.

37. Plaintiff did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia, or engage in any conduct which justified the actions of all Defendants.

38. The unlawful arrest, detention and malicious prosecution in this case were the direct result of all Defendant Officer(s)' pattern, practice and custom of subjecting citizens such as the Plaintiff to arrest, prosecution and incarceration in the absence of probable cause.

39. The Defendant officer(s) acted willfully, deliberately, maliciously or with reckless disregard of the Plaintiff's constitutional and statutory rights.

40. As a direct and proximate result of the actions of all Defendant Officer(s), the Plaintiff suffered and continues to suffer physical and psychological harms, pain and suffering, damage to reputation, some or all of which may be permanent, as well as financial losses.

41. As a direct and proximate result of the actions of all Defendants Officer(s), the Plaintiff suffered his loss of liberty by being incarcerated for over two (2) years.

42. All Defendant Officer(s) engaged in the aforesaid conduct for the purpose of violating the Plaintiff's constitutional rights by subjecting the Plaintiff to unlawful arrest, malicious prosecution, and prolonged detention.

43. The actions and conduct of the Defendant Officer(s) were caused by a policy, practice and custom of Defendant City of Philadelphia of failing, with deliberate indifference, to supervise, monitor, and properly train narcotics officers with respect to (a) their duty to provide only truthful information in securing search and arrest warrants, (b) their duty to ensure that relationships and dealings with confidential

informants and/or sources are in accord with Police Department policy and constitutional commands, (c) their duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) their duty to provide accurate and truthful information to the prosecutor's office, (f) their duty to report and disclose misconduct and illegal actions of other police officers, (g) the proper execution of search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

44. Defendant City of Philadelphia has failed to properly discipline the Defendant Officer(s) and other officers in the Police Department in cases involving violations of rights of civilians, including cases of improper searches, seizures, arrests, and prosecutions, thereby causing the violations in this case.

45. The above-described actions of all of the Defendants caused the violations of the Plaintiff's rights under the Fourth and Fourteenth Amendment as alleged in this complaint.

## FIRST CAUSE OF ACTION
## FEDERAL CIVIL RIGHTS VIOLATIONS

46. The allegations set forth in paragraphs 1-45 inclusive, are incorporated herein as if fully set forth.

47. As a direct and proximate result of the Defendants above described unlawful and malicious conduct, committed under the color of state law, and while acting in that capacity, the Defendants deprived Plaintiff of the equal protection of the laws and Plaintiff's rights, privileges and immunities under the laws and the Constitution of the

United States. Plaintiff's right to be free from false arrest, false imprisonment, malicious prosecution, to be secure in one's person and property, to access to the Courts, and to due process and equal protection of the law, all to Plaintiff's great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws and Constitution of the United States in particular the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

48. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was forced to endure great pain and mental suffering, and was deprived of physical liberty, all to Plaintiff's great detriment and loss.

49. The City of Philadelphia permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

   a. Unjustified, unreasonable and illegal use of process by police officers;
   b. Abuse of police powers, including false arrest, malicious prosecution, harassment and improper searches;
   c. Misrepresenting facts in order to establish probable cause where none would otherwise exist;
   d. Arresting and incarcerating citizens without probable cause solely for the purpose of committing citizens to prison with no intention of seeking criminal prosecutions;
   e. Psychologically or emotionally unfit persons serving as police officers; and
   f. Failure of police officers to prevent, deter, report or take action against the unlawful conduct of police officers under such circumstances as presented herein.

50. Defendant City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. Unlawful detentions and unlawful arrests by police officers;
   b. The proper exercise of police powers, including but not limited to the use of

      false information to obtain search warrants, fabrication of evidence, unlawful arrest, malicious prosecution and unlawful detention;

c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

e. Police officers' use of their status as police officers to employ the use of unlawful search and/or arrest, or to achieve ends not reasonably related to their police duties;

f. Police officers' use of their status as police officers to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;

g. The failure of police officers to follow established policies, procedures, directives and instructions regarding the securing of search warrants and the use of arrest powers under such circumstances as presented in this case;

h. The refusal of police officers to intervene when other officers violate the rights of citizens in their presence;

i. The failure to identify and take remedial or disciplinary action against units of officers assigned to narcotics investigations in light of repeated instances of misconduct over a period of many years as alleged in this Complaint; and

j. The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

    51. Defendant City of Philadelphia failed to properly train, supervise or discipline officers assigned to narcotics units of the Philadelphia Police Department who have engaged over a period of many years in systematic abuses of authority, including but not limited to: (a) the duty to provide only truthful information in securing search and arrest warrants, (b) the duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands, (c) the duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) the duty to provide accurate and truthful information to the prosecutor's office, (f) the duty to report and disclose misconduct and illegal actions of other police officers, (g) the improper execution of

search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

52. Defendant City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia police, including the Defendant Officer(s)in this case, to violate the rights of citizens such as the Plaintiff.

53. Defendant City of Philadelphia is deliberately indifferent to the need to train, supervise and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department (PPD) fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

   a. There are excessive and chronic delays in resolving disciplinary complaints;
   b. There is a lack of consistent, rational and meaningful disciplinary and remedial actions;
   c. There is a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct.
   d. The PPD's internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;
   e. The PPD discipline, as practiced, is incident based rather than progressive. Thus, repeat violators are not being penalized in proportion to the number of violations.
   f. The conduct of IAD investigations demonstrates that PPD internal affairs personnel are not adequately trained and supervised in the proper conduct of such investigations;
   g. A global analysis of IAD's investigatory procedures indicates a pattern of administrative conduct where the benefit of the doubt is given to the officer rather than the complainant;
   h. There are serious deficiencies in the quality of IAD investigations and the

validity of the IAD findings and conclusions;
i. The PPD lacks an effective early warning system to identify, track and monitor "problem" officers.
j. Despite the fact that the Defendant officer had amassed an exceptionally large number of serious misconduct complaints, the officer stayed well below the radar of an early warning system;
k. Despite numerous prior complaints against the Defendant officer, the PPD took no meaningful disciplinary or remedial actions;
l. Despite numerous prior complaints against the Defendant officer, the PPD took no meaningful steps to more closely monitor, retrain and supervise the officer;
m. IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. The interviews that are conducted by IAD are below acceptable standards of police practice and fail to address key issues in the cases; and
n. IAD fails to acknowledge the disproportionate and extreme use of force used by police officers in the investigation of citizen complaints and fails to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

54. The City of Philadelphia was deliberately indifferent to the need for more or different training, supervision, investigation or discipline in the areas of:

a. Use of information in obtaining probable cause;
b. Exercise of police powers;
c. Police officers with emotional or psychological problems;
d. Police officers use of their status as police officers to have persons falsely arrested and maliciously prosecution and unlawfully searched or to achieve ends not reasonably related to their police duties; and
e. False arrest, malicious prosecution and evidence planting of citizens.

55. The City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other police officers, thereby causing and encouraging police officers, including Defendants Reynolds, Walker, Norman and Kelly in this case, to violate the rights of citizens such as Plaintiff.

56. The City of Philadelphia failed to properly sanction or discipline officers and acquiesced to the Defendant Officer(s)' unlawful conduct after becoming aware that

these particular officers engaged in the aforementioned conduct in cases dating back to 2002 while concealing and/or aiding and abetting in the violations of constitutional rights of citizens by this police officer, thereby causing and encouraging police officers, including Defendants Reynolds, Walker, Norman and Kelly in this case, to violate the rights of citizens such as Plaintiff.

57. There has been a longstanding history, which has been extensively documented since the 1980s, of Philadelphia Police Officers engaging in rampant illegal conduct in narcotics investigations. A non-exhaustive list of such conduct includes:

   a. In the early 1980s, in the "One Squad Scandal" a group of Philadelphia narcotics Officers were convicted of selling drugs that they had stolen from dealers;
   b. During the decade between 1980-1989, a lieutenant and three officers from another drug unit, the "Five Squad" engaged in conduct including the theft of drugs and over $280,000.00 that resulted in federal convictions for, *inter alia*, racketeering;
   c. In or around February 1995, Philadelphia Police Officer John Baird and five other members of the 39th District were federally prosecuted and ultimately sentenced for violating the rights of, and stealing money from, over 40 Philadelphians. These Officers planted drugs on innocent individuals, conducted unreported raids, and stole from suspects;
   d. In 1997, federal drug convictions were overturned as a result of a 1998 internal affairs finding that narcotics officer John Boucher was a potentially corrupt police officer;
   e. In the last five years, numerous narcotics officers – including, as described *supra*, some and/or all of the Defendant Officers in this matter – have engaged in conduct causing them to have been removed from the narcotics assignments. In the last five years, as a result of a series of articles by Philadelphia Daily news reports known as "tainted Justice", Philadelphia Police Officers Jeffrey Cujdik, Richard Cujdik, Robert McDonnell, Thomas Tolstoy, Joseph Bologna and Thomas Dealer have all been assigned to either desk duty or non-narcotics related assignments. These officers engaged in raids of small convenience shops in Philadelphia in which they disabled surveillance systems to hide their conduct, which included theft of cash and groceries. Jeffrey Cujdik routinely alleged criminal behavior in search warrants involving confidential informant who subsequently denied having provided information or services on many of

      the cases in which Cujdik affirmed he had;

    f. In May of 2013, Philadelphia Police Officer Jeffrey Walker was arrested and charged in the United States District Court for the Eastern District of Pennsylvania for acts including, *inter alia*, "by means of actual or threatened force or violence or fear of injury, immediate and future to the victim's person, and by use of firearm; and by use of his position as a Philadelphia Police Officer, did obtain personal property, cash and marijuana unlawfully . . ." The criminal complaint against Defendant Walker described flagrant manner in which he unwittingly disclosed to an FBI informant his practiced schemes to rob drug dealers of both drugs and money. He described the manner in which he would confiscate a large portion of a drug dealer's drugs for himself and report only a small portion of what he actually found in the police report. In addition, he described a scam to plant drugs in a drug dealer's car so that he could arrest the drug dealer, take the drug dealer's keys, and then use the dealer's keys to enter the drug dealer's apartment and steal money.

58. The City of Philadelphia was aware and was deliberately indifferent to the unconstitutional acts and omissions of the Defendant Officer(s) when:

    a. Beginning in 2002, several legal complaints alleging civil and constitutional rights of false arrests, malicious prosecutions, falsifying documents and testimony alleging the violations of the constitutional rights of citizens by the Defendant officers were filed;

    b. In 2005, former Philadelphia Police Commissioner Sylvester Johnson testified at trial in the case of *Arnold Randall v City of Philadelphia, et al.*, C.A. No. 04-1081 regarding the customs, policies and procedures with respect to the narcotics units generally and specifically with regards to allegations that the Defendant officers engaged in false arrests, malicious prosecutions and fabrication of evidence;

    c. In 2005, IAD was authorized by the City of Philadelphia to investigate the numerous allegations of false arrests, malicious prosecution and fabrication claims against the Defendant officers, as well as other members of the narcotics units;

    d. In 2005 and later, the Philadelphia City Solicitor's Office was authorized by the City of Philadelphia to investigate the numerous allegations of false arrests, malicious prosecution and fabrication claims against the Defendant officers, as well as other members of the narcotics units;

    e. The City of Philadelphia was also aware that the federal authorities were investigating these same Defendant officers for several years for the violations of citizens' civil and constitutional rights during this period of time;

    f. In 2007, the City of Philadelphia was aware of the constitutional violations by these same officers and other officers in the narcotics units when the Third Circuit Court of Appeals denied the Defendant officers claim of

   Qualified Immunity due to their unlawful and unconstitutional actions in a case averring the same claims as this case – false arrest, malicious prosecution and falsification of documents. *See Andre Blaylock v City of Philadelphia, et al.* 504 F.3d 405 (3d Cir. 2007); and
   g. In December 2012, the Philadelphia District Attorney's Office informed Philadelphia Police Commissioner Ramsey that the Defendant officers would no longer be permitted to be witnesses in narcotic cases.

59. Defendant City of Philadelphia continued to permit, acquiesce, encourage, tolerate, ratify and has been deliberately indifferent to the unconstitutional acts and omissions by the Defendant Officer(s) despite the aforementioned allegations, investigations and Court holdings for years.

60. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to citizens like the Plaintiff and the need for more or different training, investigation and discipline are policies and customs of the City of Philadelphia and have caused police officers, including Defendants Reynolds, Walker, Norman and Kelly in this case, to believe that he can violate the rights of citizens, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

61. The actions of all Defendants, acting under the color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be secure in one's person and property, to be free from unlawful searches, from false arrest, malicious prosecution and to due process of law.

62. Defendants, City of Philadelphia and Defendants Reynolds, Walker, Norman and Kelly, acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiff of his constitutional and statutory rights.

63. By these actions, all Defendants have deprived Plaintiff of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

## PUNITIVE DAMAGES

64. Plaintiff re-alleges paragraphs 1-63 of this complaint as though fully set forth herein.

65. The conduct of Defendants Reynolds, Walker, Norman and Kelly was outrageous, malicious, wanton, willful, reckless and intentionally designed to inflict harm upon Plaintiff.

66. As a result of the acts of Defendants Reynolds, Walker, Norman and Kelly alleged in the preceding paragraphs, Plaintiff is entitled to punitive damages as to each cause of action.

## JURY DEMAND

67. Plaintiff demands a jury trial as to each Defendant and as to each count.

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages;

b. Punitive damages;

c. A declaratory judgment that the practices and policies complained of are unconstitutional;

d. Reasonable attorney's fees and costs; and

      e. Such other and further relief as appears reasonable and just.

/s/Michael Pileggi
MICHAEL PILEGGI, ESQUIRE
303 Chestnut Street
Philadelphia, PA 19106